**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE BURLINGTON INSURANCE CO., Plaintiff, | : | Case No.: 2:14-cv-66 |
| vs. | : | Judge: |
| EDEN CRYOGENICS, LLC. f/k/a BREHON CRYOGENICS, LLC, 8445 Rausch Drive Plain City, OH 43064 | : | |
| and | : | |
| STEVEN L. HENSLEY, 6496 Oharra Road Galloway, OH 43119 | : | |
| and | : | |
| JIM MITCHELL, 14747 Maple Ridge Road Milford Center, OH 43045, Defendants. | : | |

**COMPLAINT FOR DECLARATORY RELIEF AND JURY DEMAND**

Plaintiff The Burlington Insurance Company ("TBIC") hereby makes its Complaint against Defendants Eden Cryogenics, LLC f/k/a Brehon Cryogenics, LLC ("Eden Cryogenics), Steven L. Hensley ("Hensley"), and Jim Mitchell ("Mitchell") (collectively "Defendants"), and alleges as follows:

## I. NATURE OF ACTION

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. TBIC seeks a declaration that it has no duty to defend or indemnify Defendants under certain insurance policies issued by TBIC ("TBIC policies") with respect to

the Underlying Lawsuit, identified in this Complaint, which alleges various excluded intellectual property and trade-secret misappropriation claims against Defendants.

## II. PARTIES

2. Plaintiff TBIC is an insurance company organized and existing under the laws of the State of North Carolina, with its principal place of business in Burlington, North Carolina.

3. Defendant Steven L. Hensley is a citizen of the state of Ohio who resides in Galloway, Ohio.

4. Defendant Jim Mitchell is a citizen of the state of Ohio who resides in Milford Center, Ohio.

5. Defendant Eden Cryogenics, LLC is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in Plain City, Ohio. On information and belief, defendant Steven L. Hensley is Eden Cryogenics, LLC's only member.

6. Eden Cryogenics, LLC is registered to do business in the state of Ohio.

## III. JURISDICTION AND VENUE

7. This declaratory judgment action is brought pursuant to 28 US.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

8. An actual justiciable controversy exists between TBIC and Defendants within the meaning of 28 US.C. § 2201 regarding whether TBIC has a duty to defend and indemnify Defendants under the TBIC policies, as more particularly described below.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and on information and belief the suit is between citizens of different states.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, in that Defendants reside in this judicial district, and in that the Underlying Lawsuit is pending in this judicial district.

## IV. UNDERLYING LAWSUIT

### The Complaints

11. This action addresses liability insurance coverage for a lawsuit brought against Eden Cryogenics by Underlying Plaintiff Kendall Holdings, Ltd., d/b/a PHPK Technologies ("PHKP"). This lawsuit is referred to herein as the "Underlying Lawsuit."

12. PHKP filed four complaints against Defendants in the Underlying Lawsuit ("Complaints" or "Underlying Complaints"). The Original Underlying Complaint was filed in this Court on April 24, 2008 and was entitled *Kendall Holdings, Ltd, d/b/a/ PHPK Technologies v. Eden Cryogenics, LLC, Steven L. Hensley, Jim Mitchell and One or More John Does Defendants*, Case No. C2-08-0390 (Doc. # 2).

13. On May 21, 2008, PHKP filed its First Amended Complaint (Doc. # 21); on December 1, 2009, PHKP filed its Second Amended Complaint (Doc. # 61); and on October 20, 2011, PHKP filed its Third Amended Complaint (Doc. # 136). The allegations in the Underlying Complaints are in many instances similar for purposes of determining the insurance coverage issues.

14. The Complaints allege that PHKP is a supplier of refrigeration and high-vacuum equipment and components. They further allege Hensley had been the president of Kendall's predecessor, referred to in the Complaints as "Old PHPK," since its inception.

15. The Complaints further allege that in March of 2004, PHKP purchased all of the assets of Old PHKP, including Old PHPK's intellectual property rights associated with various shop drawings of Old PHPK's products and including Old PHKP's confidential customer and price lists. PHKP also allegedly retained Hensley as its president and hired Mitchell to assist with preparing and revising the shop drawings.

16. In or about November of 2004, the Complaints allege, PHKP terminated Hensley's and Mitchell's employment. The Original and First and Second Amended Complaints allege that Hensley was terminated for cause; the Third Amended Complaint, however, alleges that Hensley was terminated for economic reasons.

17. In or about January of 2006, the Complaints allege, Hensley founded Eden Cryogenics and hired Mitchell into the new company. And during late 2007 and early 2008, PHKP allegedly discovered that Eden Cryogenics had issued its own catalogue of products to PHKP's customers, which catalogues contained part drawings that were allegedly identical to or substantially similar to those owned by PHKP.

18. The Complaints further allege that PHPK learned that Eden Cryogenics was contacting PHKP customers and bidding or quoting prices just below those that PHKP was charging for similar products.

19. According to the Complaints, PHPK subsequently developed evidence that Hensley and Mitchell had stolen PHKP's shop drawings and customer and price lists, and that Eden Cryogenics unlawfully used that stolen material for the express purpose of competing with PHPK in the marketplace.

20. As germane to the insurance coverage questions at issue in this declaratory judgment action, the Complaints allege that Eden Cryogenics infringed on PHPK's copyrights by

1) reproducing the copyrighted PHPK catalogue, in the form of the Eden catalogue; 2) distributing copies of the copyrighted PHPK catalogue, in the form of the Eden catalogue, to the public by transfer of ownership; and 3) displaying copies of the copyrighted PHPK catalogue without permission or license from PHPK.

21. Also as germane to the insurance coverage questions at issue in this declaratory judgment action, the Complaints allege that Defendants misappropriated and wrongfully used PHKP's trade secrets, including shop drawings, manufacturing, assembly and quality control procedures, pricing information, and customer lists in order to compete with PHPK.

**Summary Judgment, Dismissal of Claims, Appeal, and Trial**

22. On January 17, 2012, the District Court in the Underlying Lawsuit issued its order on the parties' cross-motions for summary judgment. Among other rulings, the court 1) granted Defendants' motion with regard to PHKP's Misappropriation of Trade Secrets claim on statute of limitations grounds, and 2) denied Defendants' motion with regard to PHKP's Copyright infringement claims.

23. On February 10, 2012, the parties filed in the District Court, and the District Court subsequently granted, a stipulation for dismissal with prejudice of all claims except for PHPK's Misappropriation of Trade Secrets count against Defendants.

24. PHKP subsequently took an appeal from the District Court's ruling on the Trade Secrets count. On April 5, 2013, the Sixth Circuit Court of Appeals reversed the District Court's ruling, holding that Mitchell's acquisition of the shop drawings in 1999, while Mitchell was employed by Old PHPK, did not trigger the applicable statute of limitations. The Court further held that genuine issues of material fact precluded summary judgment on the Defendant's other defenses to the Trade Secrets count. Specifically, the Court ruled that genuine issues of material

fact existed as to a) whether PHKP had permitted Mitchell to retain the shop drawings; b) whether the shop drawings constituted "trade secrets" at all; and c) whether Mitchell held an ownership interest in the shop drawings that would preclude a misappropriation claim.

25. The Sixth Circuit remanded to the District Court for trial on the Misappropriation of Trade Secrets claim. The District Court instructed the jury that it must determine if Defendants misappropriated and used PHPK's shop drawings, and if so whether the misappropriation was willful and malicious.

26. On or about October 22, 2013, the jury entered a verdict in favor of PHPK on its Misappropriation of Trade Secrets claim against all three Defendants. The jury further found that all three Defendants' misappropriation was willful and malicious.

28. The jury awarded compensatory damages against Eden Cryogenics in the amount of $887,000.00; against Defendant Hensley in the amount of $150,000.00; and against Defendant Mitchell in the amount of $10,000.00.

29. PHKP subsequently filed post-trial motions for punitive damages against Eden Cryogenics in the amount of $2,661,000 and against Hensley in the amount of $450,000.00, and for attorney fees and expenses in the amount of $1,541,177.00 plus interest, all based on the jury's finding that Defendants "willfully and maliciously" misappropriated PHKP's trade secrets. On information and belief, these motions remain pending before the District Court.

30. The Complaints also allege that Defendants' wrongful conduct had been continuing throughout the course of the Underlying Lawsuit. On information and belief, the parties to the Underlying Lawsuit are in the process of stipulating to a post-trial entry of a permanent injunction against Defendants.

**The Claims Correspondence**

31. Defendants tendered their coverage claim to TBIC on or about July 7, 2008.

32. On or about July 11, 2008, TBIC sent Hensley a letter denying any duty to defend or indemnify Defendants under the TBIC policies.

33. TBIC heard nothing more from Defendants for the next five years and four months. Then, on November 12, 2013, after the trial was completed and the verdict entered in the Underlying Lawsuit, Defendants' counsel sent a letter to TBIC demanding that TBIC pay Defendants their costs of defending the Underlying Lawsuit, in the amount of $2,292,224.00, and that TBIC indemnify the Defendants against the jury verdict in the amount of its $1,000,000.00 policy limit.

34. In the same letter, Defendants' counsel conceded that there would be no coverage for any punitive damages portion of the verdict.

35. In the same letter, Defendants' counsel also conceded that the only potentially-applicable coverage in the TBIC Policies was "Coverage B," the "Personal and Advertising Injury" coverage. Defendants' counsel asserted that the "advertising injury" component of this coverage applies because the Complaints alleged that PHPK's copyrighted shop drawings and its confidential pricing information were used in Defendants' advertising.

## V. THE INSURANCE POLICES

36. The Burlington Insurance Company issued six annual Commercial General Liability policies to Eden Cryogenics, including:

- Policy number HGL0013988, effective 9/29/06 – 9/29/07
- Policy number HGL0016963, effective 9/29/07 – 9/29/08
- Policy number HGL0019720, effective 9/29/08 – 9/29/09
- Policy number HGL0022420, effective 9/29/09 – 9/29/10
- Policy number HGL0025477, effective 9/29/10 – 9/29/11
- Policy number HGL0028807, effective 9/29/11 – 9/29/12

Certified copies of these policies are attached hereto as Exhibits A, B, C, D, E, and F, respectively, and are referred to herein as the "TBIC Policies."

37. TBIC Policy Exhibits A through E were written on Commercial General Liability Coverage Form, CG 00 01 10 01. TBIC Policy Exhibit F was written on Commercial General Liability Coverage Form, CG 00 01 12 07, the pertinent terms in which are substantially identical to those in the 10 01 version.

38. As specified in the TBIC Policies, and as set out in detail below, the coverage provided is limited, and is subject to certain definitions, scope and date restrictions, insuring agreements, retained and aggregate policy limits, and exclusions.

39. Coverage B, "Personal and Advertising Injury Liability", provides:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION 1 – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

*** * ***

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

* * *

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

40. The TBIC Policies contain the following definitions relevant to the "personal and advertising injury" coverage in the Commercial General Liability Coverage Form:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

* * *

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

f. The use of another's advertising idea in you "advertisement; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

41. The TBIC Policies contain the following exclusions applicable to

"personal and advertising injury" coverage contained in the Commercial General Liability Coverage Form:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

* * *

**i. Infringement Of Copyright, Patent, Trade Mark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trade-mark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

42. The TBIC Policies also contain an Endorsement entitled Exclusion – Intellectual Property ("Intellectual Property Exclusion Endorsement"), written on Form CSG-G-021 04 00,[1] which provides in pertinent part as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – INTELLECTUAL PROPERTY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETE OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to injury or damage that results from the actual or alleged infringement, or violation of any intellectual property rights or laws, including but not limited to:

1. Copyright;
2. Patent;
3. Trade dress;
4. Trade name;
5. Trade secret; or
6. Trademark.

43. The TBIC Policies also contain an Endorsement entitled Exclusion – Punitive Damages ("Punitive Damages Exclusion Endorsement"), written on Form BG-G-005 07 04,[2] which provides in pertinent part as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – PUNITIVE DAMAGES**

This endorsement modifies insurance provided under the following:

[1] Exhibit F contains the Endorsement written on Form CSG-G-021 08 09, the language in which is substantially similar to that in Form CSG-G-021 04 00.

[2] Exhibit E contains the Endorsement on Form BG-G-005 04 09, and Exhibit F contains the Endorsement on Form BG-G-005 05 10, the language in both of which is substantially similar to that in Form BG-G-005 07 04.

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETE OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim of or indemnification for punitive or exemplary damages. If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

**COUNT 1**

**DECLARATORY JUDGMENT**

44. TBIC hereby incorporates and re-alleges the allegations in paragraphs 1-43 as if fully set forth herein.

45. There exists a genuine and bona fide dispute, and an actual controversy and disagreement between TBIC and Defendants with regard to whether TBIC has a duty to defend Defendants against the Underlying Lawsuit.

46. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, TBIC in good faith requests that the Court declare the following:

a. That TBIC has no duty to defend or indemnify Defendants under the policy's "personal and advertising injury liability" coverage because the Underlying Complaints do not allege a "personal and advertising injury" offense.

b. That TBIC has no duty to defend or indemnify Defendants under the policy's "personal and advertising injury liability" coverage because the claims in the Underlying Complaints are excluded by the Intellectual Property Exclusion Endorsement.

c. That, alternatively, TBIC has no duty to defend or indemnify Defendants under the policy's "personal and advertising injury liability" coverage because the claims in the Underlying Complaints are excluded by the Infringement Of Copyright, Patent, Trade Mark Or Trade Secret exclusion.

d. That TBIC has no duty to defend or indemnify Defendants under the policy's "personal and advertising injury liability" coverage because the claims in the Underlying Complaints are excluded by the Knowing Violation Of Rights Of Another exclusion.

e. That TBIC has no duty to defend or indemnify Defendants against "personal and advertising injury liability" under any TBIC policy issued after any pertinent "material" was first published, because any such coverage is excluded by the Material Published Prior to Policy Period exclusion.

f. That TBIC has no duty to defend or indemnify Defendants against "personal and advertising injury liability" to the extent that "personal and advertising injury", if any, arose out of the publication of material done by or at the direction of the insured with knowledge of its falsity, because such coverage is excluded by the Material Published With Knowledge Of Falsity exclusion.

g. That TBIC has no duty to defend or indemnify any Defendant who does not quality as an "insured" under the TBIC Policies.

h. That TBIC has no duty to defend or indemnify Defendants to the extent that Defendants failed to comply with any condition precedent to the TBIC policies, including but not limited to Defendants' late notice of claim, and/or to the extent that Defendants' late notice of claim substantially prejudiced TBIC.

i. That TBIC has no duty to defend or indemnify Defendants to the extent that their five-year delay in responding to TBIC's coverage declination letter constitutes a waiver or estoppel of or otherwise precludes coverage.

j. That TBIC has no duty to indemnify Defendants for any punitive or exemplary damages, because such damages are excluded by the Punitive Damages Exclusion Endorsement and are otherwise not subject to coverage under applicable law.

k. That TBIC has no duty to defend or indemnify Plaintiffs under any other provision in the TBIC Policies.

l. That if the Court finds that there is a duty to defend Defendants under any TBIC Policy, that TBIC is only obligated to pay defense counsel the normal hourly rate that its pays to other counsel with similar experience who represent its insureds in similar cases in the United States District Court for the Southern District of Ohio, Eastern Division.

m. That all or part of Defendants' claims for coverage are barred by the applicable statute of limitations and/or the doctrine of laches.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff The Burlington Insurance Company prays as follows:

(1) For a declaration that it has no duty to defend or indemnify Defendants Eden Cryogenics, LLC, Steven L. Hensley or Jim Mitchell ("Mitchell") under the TBIC Policies with respect to the Underlying Lawsuit; and

(2) For such other and further relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Gregory A. Harrison*

Gregory A. Harrison (0029814)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
Email: greg.harrison@dinsmore.com

Trial Attorney for Plaintiff
The Burlington Insurance Company

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable by jury.

Respectfully submitted,

*/s/ Gregory A. Harrison*

Gregory A. Harrison (0029814)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
Email: greg.harrison@dinsmore.com

Trial Attorney for Plaintiff
The Burlington Insurance Company

2629886v1