UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE BURLINGTON INSURANCE CO.,

                Plaintiff,

    v.

EDEN CRYOGENICS LLC, *et. al.*,

              Defendants.

Case No. 2:14-cv-00066
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the parties' cross-motions for summary judgment (ECF Nos. 19, 20). Plaintiff, The Burlington Insurance Co., ("Burlington") is an insurance company that issued a series of commercial general liability ("CGL") policies (the "TBIC Policies") to Defendant Eden Cryogenics, LLC f/k/a Brehon Cryogenics, LLC ("Eden"). Defendant Eden and its employees, Defendants Steven L. Hensley ("Hensley") and Jim Mitchell ("Mitchell") (collectively, "Defendants") seek to recover defense costs and indemnification from Burlington for claims asserted against them in an underlying lawsuit, captioned *Kendall Holdings, Ltd. d/b/a PHPK Technologies v. Eden Cryogenics, LLC et. al.*, Case No. 08-cv-390 (S.D. Ohio 2008) (the "PHPK Lawsuit").

Burlington now moves for summary judgment, asserting that the TBIC Policies do not provide coverage based on a plain reading of their contractual terms (ECF No. 19). Defendants filed a cross-motion for partial summary judgment seeking various declarations from the Court amounting to Burlington's liability for coverage of: (1) costs incurred in defending the PHPK Lawsuit; (2) future costs of defending the PHPK Lawsuit until final adjudication; and (3) indemnification up to the policy limit for compensatory damages awarded against Defendants in the PHPK Lawsuit (ECF No. 20). Both motions are now fully briefed and ripe for review.

For the reasons that follow, Burlington's Motion for Summary Judgment (ECF No. 19) is **GRANTED in PART and DENIED in PART**. Defendants' Motion for Partial Summary Judgment (ECF No. 20) is likewise **GRANTED in PART and DENIED in PART**.

## I. BACKGROUND

### A. The Underlying Lawsuit

On April 24, 2008, Kendall Holdings, Ltd. d/b/a PHPK Technologies ("PHPK") brought suit against Eden and several of its employees for misappropriation of trade secrets, copyright infringement, unfair competition, tortious interference, unjust enrichment, conversion and civil conspiracy. (PHPK Lawsuit Initial Complaint ¶¶ 16-21; ECF No. 19-2). Both companies deal in the cryogenics industry. Cryogenics companies manufacture and supply items such as valves, bayonets,[1] and vacuum-insulated piping. The industry refers to the valves and bayonets as "standard products." In order to construct these product lines, companies in the industry utilize professionally drafted design and engineering drawings, known as "shop drawings." PHPK alleged that the Defendants used the shop drawings to develop a product line identical to PHPK's. (*Id.* ¶ 4.) PHPK further alleged that its advertising ideas, reflected in the confidential information and trade secrets, were used in Eden's marketing materials, including Eden's product catalogue. (*Id.* ¶¶ 5, 7, 24.) PHPK also alleged that Eden misappropriated PHPK's pricing information and customer lists. (*Id.* ¶ 83.) Specifically, PHPK alleged that its customers began purchasing products from Eden's catalogue in late 2007 and 2008. (*Id.* ¶¶ 29-33.)

On or about July 7, 2008, Defendants made a coverage claim to Burlington and received a letter denying coverage dated July 11, 2008. (ECF No. 19-4.) In the letter, Burlington asserted, among other defenses, that the Intellectual Property Exclusion ("IP Exclusion") precluded coverage. (*Id.*)

---

[1] A "bayonet," in the cryogenics industry, is a device used to connect two sections of vacuum-insulated piping.

PHPK filed an Amended Complaint (the "PHPK Lawsuit Complaint") on October 20, 2011.  (PHPK Lawsuit Complaint; ECF No. 19-6.)  The PHPK Lawsuit Complaint alleged copyright infringement, violation of the Ohio Deceptive Trade Practices Act, misappropriation of trade secrets, breach of implied contract of confidentiality, common law unfair competition, tortious interference, conversion, breach of fiduciary duty/duty of loyalty, and civil conspiracy. (*Id.*, pp. 14-24.)

This case was tried to a jury from October 8-22, 2013 on the then-sole remaining claim of misappropriation of trade secrets.  The jury returned a verdict in favor of PHPK against all of the Defendants, finding that Eden and Hensley willfully and maliciously misappropriated PHPK's trade secrets and Mitchell misappropriated the same.  The jury awarded compensatory damages against Eden in the amount of $887,000; Hensley in the amount of $150,000; and Mitchell in the amount of $10,000.

On November 12, 2013, Eden sent a letter to Burlington seeking payment of defense costs associated with the PHPK Lawsuit in the amount of $2,292,224.00 and indemnification for Defendants against the jury verdict in the amount of the $1,000,000 policy limit.  (ECF No. 19-8.)

Post-trial, PHPK moved for punitive damages, which the Court granted, against Eden in the amount of $250,000; and Hensley in the amount of $75,000 (Doc. 270).  Eden and Hensley subsequently moved for judgment in their favor as a matter of law, or alternatively, for a new trial, pursuant to Federal Rules of Civil Procedure 50 and 59 (ECF Nos. 278, 284).  On April 17, 2015, the Court denied both motions with prejudice (ECF No. 302).

**B. The TBIC Policies**

Burlington issued a CGL policy to Eden's predecessor on September 29, 2006 (the "Policy"). (McNamee Aff. Ex. I; ECF No. 19-10.) The Policy was renewed annually through September 29, 2012. (McNamee Aff. Exs. J-N; ECF Nos. 19-11 – 15.) It contains three coverage sections. Coverage A includes "Body Injury and Property Damage Liability," Coverage B includes "Personal and Advertising Injury Liability," and Coverage C includes "Medical Payments." (ECF No. 19-10, Form CG 00 01 10 01, pp. 1, 5, 7.) Several exclusions and endorsements modify the coverage sections. It is undisputed that the claims brought by PHPK against Eden would fall under Coverage B, if applicable. The contract provides:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

\* \* \*

### SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

\* \* \*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

4

\* \* \*

      f. The use of another's advertising idea in your "advertisement"; or

      g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(ECF No. 19-10, Form CG 00 01 10 01, pp. 5, 12, 14.)

The Policy also contains the following exclusions to Coverage B:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

**i. Infringement Of Copyright, Patent, Trade Mark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trade-mark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(ECF No. 19-10, Form CG 00 01 10 01, p. 6.)

Finally, the Policy contains an Endorsement (the "IP Endorsement"), which reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – INTELLECTUAL PROPERTY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to injury or damage that results from the actual or alleged infringement, or violation of any intellectual property rights or laws, including but not limited to:

1. Copyright;
2. Patent;
3. Trade dress;
4. Trade name;
5. Trade secret; or
6. Trademark.

(ECF No. 19-10, Form CSG-G-021 04 00.)

## C. Procedural History

Burlington initiated this lawsuit by filing a Complaint against Defendants for declaratory relief on January 17, 2014. Burlington filed an Amended Complaint (the "Complaint" or "Compl.") later on the same day (ECF No. 3). The Complaint alleges, based on a variety of reasons, that the TBIC Policies do not cover the defense or judgment costs incurred by Defendants in the PHPK Lawsuit and seeks a declaration that Burlington has no duty to defend or indemnify the Defendants for the same. (Compl. ¶ 46, p. 14.)

On February 25, 2015, the parties filed cross-motions for summary judgment (ECF Nos. 19, 20). These motions have been fully briefed and are now ripe for review. The Court addresses each in turn below.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986);

*Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. State of La. (Bd. Of Trs. For State Colls. & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

**B. Insurance Policies**

"An insurance policy is a contract in which the insurer promises to indemnify the insured for losses incurred by the insured which arise out of the occurrence of a risk identified in the policy." *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 159 Ohio App.3d 590, 594-95, 2005-Ohio-430, ¶¶ 11-12, 824 N.E.2d 1027, 1030-31 (*quoting GuideOne Mut. Ins. Co. v. Reno,* Greene App. No. 01–CA–68, 2002-Ohio-2057, 2002 WL 857682, affirmed sub nom. *Cincinnati Ins. Co. v. Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094).

"The insurer's promise to indemnify is separate and distinct from its obligation to defend an insured in an action, and the duties are triggered by different events." *Id.* "The duty to indemnify is triggered by the insured's actual legal liability. The duty to defend is a prior duty that's triggered by the insured's demand that the insurer provide a defense to a claim of alleged liability." *Id.* The existence of a duty to defend is based on the underlying allegations. The insurer has a duty to defend the insured if the "allegations state a claim that falls either potentially or arguably within the liability insurance coverage." *Id* (*quoting Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, at ¶ 18); *accord Chiquita Brands Int'l, Inc. v. Nat. Union Ins. Co.*, 2013-Ohio-759 ¶ 8, 988 N.E.2d 897, 899-900 ("An insurer's duty to defend is broader than the duty to indemnify. When the allegations in the complaint or any allegations arising after the complaint state a claim that is potentially within the policy coverage, the insurer must accept the defense of the claim, regardless of the ultimate outcome or the insurer's ultimate liability.").

Insurance contracts are to be read in their entirety. "In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible." *United States v. Strip,* 868 F.2d 181, 185 (6th Cir.1989) (*citing Farmers'*

*Nat'l Bank v. Delaware Ins. Co.,* 83 Ohio St. 309, 94 N.E. 834 (Ohio 1911)).  As a result of this

approach, courts must consider endorsements a part of an insurance contract.  *Workman v. The*

*Republic Mut. Ins. Co.,* 144 Ohio St. 37, 46, 56 N.E.2d 190, 194 (Ohio 1944) ("the policy and

the endorsement are to be considered as component parts of a single contract").  In the event of a

conflict between an endorsement and an insurance contract, the endorsement controls.  *Id.* ("The

endorsement must be regarded as a modification of the terms of the original contract of insurance

if a clear inconsistency appears").

Interpretation of an insurance contract is a question of law for the Court. *Leber v. Smith,*

70 Ohio St.3d 548, 553 (1994). It is well-settled that policy provisions are to be afforded a

reasonable construction. *Hillyer v. State Farm Mut. Auto Ins. Co.,* 131 Ohio App.3d 172, 177

(Cuyahoga Co.1999). Furthermore, it is well-settled that ambiguities in the interpretation the

insurance contract are to be resolved in favor of the insured. *Etter v. Travelers Ins. Co.,* 102 Ohio

App.3d 325, 332 (Miami Co.1995).

### III. BURLINGTON MOTION

#### A. The IP Exclusion Endorsement

In its Motion for Summary Judgment (ECF No. 19), Burlington first argues that the IP

Endorsement excludes any duty it had to defend or indemnify Defendants in relation to the

PHPK Lawsuit.

The IP Exclusion does not except from the scope of coverage "infringement in your

'advertisement', of copyright, trade dress or slogan." (ECF No. 19-10, Form CG 00 01 10 01, p.

6.) In plain terms, the IP Exclusion includes an exception that would require Burlington to

provide coverage where a claim is made against the insureds for infringement of copyright, trade

dress or slogan in the insureds' advertisement.  Defendants assert, and Burlington does not

contest, that such a claim was made in this case.[2] But, the IP Endorsement, which modifies the terms of the contract, including the IP Exclusion (*see infra*, at II.B), explicitly states that the insurance does not apply to "injury or damage that results from the actual or alleged infringement, or violation of any intellectual property rights or laws, including but not limited to: 1. Copyright; … or 5. Trade secret … ." (ECF No. 19-10, Form CSG-G-021 04 00.)

The parties do not dispute that Ohio law provides the controlling legal standards applicable in this case. Ohio law requires that a coverage-defeating argument advanced by an insurer be the only reasonable interpretation of the policy language. *Andersen v. Highland House Co.,* 93 Ohio St.3d 547, 549, 757 N.E.2d 329 (Ohio 2001) ("[I]n order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question."). If the policy language at issue is susceptible to more than one reasonable interpretation, Ohio courts adopt the interpretation favoring the policyholder. *See King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus (Ohio 1988); *Lane v. Grange Mut. Cos.,* 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989) ("Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured"). Thus, the construction advanced by Burlington must be both reasonable and the only reasonable construction of their insuring clauses and the IP Endorsement provisions.

The parties' dispute on the applicability of the IP Endorsement to preclude coverage rests on the interpretation of the language in its heading. Defendants assert that the IP Endorsement does

---

[2] Burlington alleged that the PHPK Lawsuit Complaint does not "allege a 'personal and advertising injury' offense." Compl. ¶ 46a. However, Defendants move for summary judgment that PHPK did, in fact, allege a personal advertising injury and Burlington does not provide arguments against this assertion, but rather rests on its contention that the IP Endorsement precludes coverage. The Court notes that under Ohio law, "advertising injury" is interpreted broadly in this context, to include trademark or trade dress claims. *See Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App. 3d 747, 755-56 (Ohio Ct. App. 2005), 2003-Ohio-7151, ¶¶ 15-16, 19, 804 N.E.2d 45, 50-52.

not modify the entire contract, but rather only applies to the "Products/Completed Operations Liability Coverage Part" which is a subsection to Coverage A for "Bodily Injury and Property Damage Liability." The IP Endorsement states:

> This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

(ECF No. 19-10, Form CSG-G-021 04 00.) The first capitalized line identifies the entire contract (Commercial General Liability Coverage Part), while the second identifies a subsection to Coverage A. This should be read as a header and a sub-header, Defendants assert, such that the modification only applies to the narrower identified subheading (Product/Completed Operations Liability Coverage Part). Therefore, Defendants reason, the IP Endorsement does not apply to Coverage B for "Personal and Advertising Injury Liability" – the coverage applicable to Defendants in this case. If the IP Endorsement only modifies a subpart to Coverage A, and not Coverage B, then it does not apply to exclude coverage to Burlington's duty to defend and indemnify Defendants for the PHPK Lawsuit.

Burlington asserts that the two lines should be read in conjunction with one another, instead of the second line being read as a sub-header that modifies the header. In that case, Burlington argues, the IP Endorsement modifies the entire contract and takes care to also explicitly modify the subpart to Coverage A. The Court does not find this to be the only reasonable interpretation of the terms of the endorsement. *See e.g. Andersen*, 93 Ohio St.3d at 549. Under Burlington's theory, the only reasonable interpretation of a contract that reads:

> The following rule applies on:

> WEEKEND DAYS
> SUNDAY

11

is that the ensuing rule was not only applicable on Sunday, but also on Saturday.  As Defendants mention, such a reading would render "Sunday" superfluous, as "Weekend Days" is inclusive of "Sunday."  The Court is not persuaded that the only reasonable reading of a contract would render language superfluous.  Given the stringent standard of law directing interpretation of ambiguity in favor of the insured, the Court finds in favor of the Defendants that reading the IP Endorsement to only modify the Product/Completed Operations Liability Coverage Part is at least a reasonable interpretation of the contract language.  *See Westfield Cos.*, 155 Ohio App.3d at 753 ("Generally if a policy is capable of more than one reasonable interpretation, it will be construed strictly against the insurer and liberally in favor of the insured.").

Burlington's reliance on the Listing of Forms and Endorsements in the Policy is also unconvincing.  Burlington argues that the listing of the IP Endorsement under the heading "Commercial General Liability Policy" is indicative of its applicability to the entire Commercial General Liability Coverage Part—in other words the entire Policy.  (ECF No. 19-10, Form IFG-1-0150 03 03, at pp. 1-2.)  However, many exclusions and endorsements that explicitly apply to only specific parts of the Policy (for example, the "Med Pay" Exclusion to Coverage C) are listed under the same heading.  Indeed, there are no separate headings for Coverages A, B, and C in the Listing of Forms and Endorsements.  (*Id.*)  The inclusion of the IP Endorsement under the "Commercial General Liability Policy" heading does not indicate that it applies to the entire contract.  Burlington's motion for summary judgment in its favor on the grounds that the IP Endorsement excludes coverage of Defendants' PHPK Lawsuit costs is **DENIED**.  The Court finds that Burlington breached its contractual obligation to defend Defendants in the PHPK Lawsuit.

## B. The "Knowing Violation" Exclusion

Burlington additionally moves for summary judgment on the grounds that exclusion of coverage for "personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury" (the "Knowing Violation" provision) applies to deny Defendants indemnification for the PHPK Lawsuit judgment. (ECF No. 19-10, Form CG 00 01 10 01, p. 6.) Burlington bases its assertion on the fact that PHPK was awarded punitive damages against Defendants on the misappropriation of trade secrets claim. In order to award punitive damages in a trade secret case under Ohio law, the plaintiff must establish that the defendant acted with malice. *Avery Dennison Corp.*, *v. Four Pillars Enterprise Co.*, 45 F. App'x 479, 489 (6th Cir. 2002) (citing *Pyromatics v. Petruziello*, 7 Ohio App.3d 131, 454 N.E.2d 588 (1983)).

Under Ohio law, if a plaintiff can recover against an insured based merely on negligent conduct, a duty to defend applies notwithstanding the existence of a Knowing Violation provision in the insurance contract. *Westfield Cos.*, 155 Ohio App.3d at 757 (knowing violation exclusion does not apply where "complaint stated a claim for nonintentional infringement as well"); *Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 168 Ohio App.3d 391, 403-04 (Ohio Ct. App. 2006), 2006-Ohio-4380, ¶ 38, 860 N.E.2d 145, 154 (where plaintiff could prevail on negligent trade dress and trademark claims without proving knowledge of the infringement, insurance company had duty to defend). Thus, Burlington's duty to defend Defendants in the PHPK Lawsuit is not affected by the Knowing Violation provision, as PHPK could have proven its claims in the PHPK Lawsuit Complaint with a finding of negligence.

Defendants contend, if the factual allegations in the PHPK Lawsuit Complaint would not support a finding of mere negligence, then "the claims clearly do not support a cause of action

within the scope of the policy's coverage" and the insurer is not required to defend.  *Twin Maples*, 159 Ohio App.3d at 597.  But here, the factual allegations in the PHPK Lawsuit Complaint could support a finding of mere negligence.  The PHPK Lawsuit Complaint alleges that Mitchell took the shop drawings and gave them to Hensley and Eden.  (PHPK Lawsuit Complaint ¶ 4.)  It further alleges that the Defendants "wrongfully obtained" confidential and proprietary information.  (*Id.* ¶ 72.)  While it does allege, under the counts of action pled, that Defendants' copyright infringement was intentional, it does not solely allege so.  Neither copyright infringement nor misappropriation of trade secrets is required to be willful in order for a plaintiff to recover on their claims.  *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009) (federal copyright statute provides for greater penalties where the copyright owner proves the infringement was committed willfully, which requires knowledge or recklessness); *Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Mfg., Inc.*, 511 F. App'x 398, 404 (6th Cir. 2013) (upholding jury trial verdict finding misappropriation of trade secrets without willfulness).  The PHPK Lawsuit Complaint makes allegations that facially support claims not based upon the Defendants' "knowledge that the act would violate the rights of another."  For example, the PHPK Lawsuit Complaint alleges that Defendants "improperly used" the shop drawings "to start a competing company (Eden for the purpose of producing and selling competing cryogenic products" and that "Defendants, without consent of or license from [] PHPK, have used and are using New PHPK's trade secrets to operate Eden."  (*Id.* ¶¶ 43, 77.)  Unlike the facts in *Twin Maples*, here, there is an "interpretation of these facts that would support mere negligence."  159 Ohio App.3d at 597.  Therefore, the Knowing Violation provision did not free Burlington from its duty to defend.

The duty to indemnify is a different story.  Under Ohio law, for the purposes of an exclusion

written into an insurance contract, an intent to act is distinct from an intent to harm.  *See Guyan Intern. Inc. v Prof'l Benefits Administrators Inc.*, No. 5:20 CV 823, 2013 WL 1338194, at *24-25 (N.D. Ohio Mar. 29, 2013) (intentional act exclusion does not necessarily equate to intentional harm exclusion).  An intentional act provision in an insurance contract "is commonly used in situations … where the allegation is one of an intentional tort."  *Burlington Ins. Co. v. PMI Am., Inc.*, 862 F. Supp. 2d 719, 740 (S.D. Ohio 2012) *order clarified*, No. 2:08-CV-1054, 2012 WL 1665867 (S.D. Ohio May 10, 2012).  An intent to harm may be explicit or inferred where "the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm."  *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 195, 2010-Ohio-6312, ¶ 48, 942 N.E.2d 1090.  The Court notes that the Knowing Violation provision in this case is neither an intentional act nor an intentional harm provision.  Rather, the provision applies if the insured knew the act would violate another's rights and would inflict injury.

Burlington asserts that the jury's factual findings of "willful and malicious" conduct on the part of Eden and Hensley trigger the exclusion of Burlington's duty to indemnify under the Knowing Violation provision.  Defendants assert that the jury made no findings as to whether Defendants knew their conduct violated PHPK's rights and would inflict advertising injury.  The instructions given to the jury included the following definitions:

> "Willful" conduct requires an intent to do wrong. Willful misconduct implies an intentional disregard of a clear duty or of a definite rule of conduct, a purpose not to discharge such duty, or the performance of wrongful acts with knowledge of the likelihood of resulting injury to the plaintiff.

> "Malice" means a state of mind characterized by hatred, ill will, or a spirit of revenge; or a conscious disregard for the rights and safety of another person that has a great probability of causing substantial harm.

(PHPK Lawsuit Jury Instructions, p. 41.)  Plainly read, under these definitions, a finding of willful and malicious conduct incorporates a determination that the actor violated the rights of

15

another knowing his or her conduct was likely to result in injury.  Bound by the terms of the contract and the jury's factual findings, the Court holds that the Knowing Violation provision prohibits coverage for compensatory damages against Eden in the amount of $887,000; Hensley in the amount of $150,000.

Burlington's motion for summary judgment is, therefore, **DENIED** with respect to its duty to defend the PHPK Lawsuit and **GRANTED** as to indemnification for compensatory damages against Eden and Hensley.

### C. Punitive Damages Claim

Burlington seeks a declaration that Defendants are not entitled to coverage for the punitive damages awarded against them.  Defendants respond that they have not sought coverage for punitive damages and that indemnification for the compensatory damages awarded in the PHPK Lawsuit exhausts the policy limit of $1,000,000 for "personal and advertising injury liability" coverage.  However, the Court has determined that Eden and Hensley are not entitled to indemnification for compensatory damages (*supra*, at III.B), and indemnification for Mitchell's compensatory damages, if applicable, does not exhaust the policy limit.  In any case, the Court is bound by Sixth Circuit precedent that Ohio law "prohibits the indemnification of monies paid pursuant to an award of punitive damages arising out of the insured's own conduct." *Lumbermens Mut. Cas. Co. v. S-W Indus., Inc.*, 39 F.3d 1324, 1329 (6th Cir. 1994).  As a result, Burlington's motion for summary judgment pertaining to punitive damages is **GRANTED**.

### E. Bad Faith Claim

On May 6, 2014, the parties filed their initial Federal Rule of Civil Procedure 26(f) report (Doc. No. 12), in which they agreed to bifurcate the bad faith claim.  The report advised the Court that discovery beyond Rule 26(a) was not required for the coverage phase.  Should the

"bad faith" issues remain after the Court's summary judgment disposition, the parties recommended that initial expert designations be set for 120 days after the issuance of this Opinion and Order; rebuttal expert designations be set for 45 days after that; and discovery completed within six months from this date.

Burlington now asserts that summary judgment may be decided as a matter of law prior to any discovery. The Court disagrees. To successfully assert a bad-faith claim under Ohio law, the insured must show that the insurer failed to exercise good faith in processing a claim by refusing to pay or to defend the claim, when not based upon "circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994). Whether the insurer had "reasonable justification" requires an examination of factual evidence. *See Ohio Bar Liab. Ins. Co. v. Hunt*, 152 Ohio App. 3d 224, 233, 2003-Ohio-1381, ¶ 28, 787 N.E.2d 82, 89 ("bad faith is not shown by a mere breach of a contractual duty, nor can it be shown by an insurance company's mistaken actions relating to an unclear contractual provision," rather a court must determine whether a reasonable trier of fact could find in favor of the non-moving party). The parties are thus entitled to discovery prior to the Court's adjudication of whether a genuine issue of material fact exists with respect to bad faith. Therefore, Burlington's motion for summary judgment pertaining to the bad faith claim is **DENIED without prejudice** to refiling upon the completion of discovery.

## IV. DEFENDANTS' MOTION

Defendants move for partial summary judgment on several grounds that are unopposed. Burlington does not contest that the PHPK Lawsuit alleged a "Personal and Advertising Injury," within the purveyance of Coverage B,[3] or that Defendants are "insureds" under the Policy terms.

---

[3] There is no contention that the Defendants' insurance claims fall under Coverage A or C.

Burlington also does not contest that neither the Material Published Prior to Policy Period Exclusion, nor the Material Published with Knowledge of Falsity Exclusion applies to except Plaintiffs' policy claims from coverage.  Finally, Defendants seek, and Burlington does not contest, summary judgment on the invalidity of Burlington's assumption of obligations or expenses and statute of limitations defenses.  Summary judgment is therefore **GRANTED** as to the PHPK Lawsuit's allegation of a personal and advertising injury within the meaning of Coverage B, Eden, Hensley and Mitchell's qualification as insureds, and the inapplicability of the two exclusions, as well as the assumptions of obligations and statute of limitations defenses. Defendants also seek partial summary judgment in the form of the following declarations from the Court.

**A. IP Exclusion**

Defendants assert that the Policy exclusion applying to "'personal and advertising injury' arising out of the infringement of copyright, patent, trade-mark, trade secret or other intellectual property rights" (the "IP Exclusion") does not bar coverage due to the inclusion of the following exception: "this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."  (ECF No. 19-10, Form CG 00 01 10 01, p. 6.)  Burlington does not contest that the defense costs for the PHPK Lawsuit fall within this exception, but contends that misappropriation of trade secrets – the only claim proven against Defendants at trial[4] – is not an "'advertisement' of copyright, trade dress or slogan."  Thus, the exception would not apply to the

---

[4] As previously discussed, while the duty to defend is based on allegations in the complaint, the duty to indemnify is based only on the claims proven against the insured at trial.  *Supra*, at II.B; *see also Lipker v. Doseck*, 176 Ohio App.3d 89, 92, 2008-Ohio-1756, ¶ 9, 889 N.E.2d 1093, 1095.

indemnification costs and the IP Exclusion would bar coverage for the judgment against Mitchell in the amount of $10,000.[5]

> The Policy defines "advertisement" as follows:
>
> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>
>> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>>
>> b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

"'Trade dress' refers to the total image or overall appearance of a product, including size, shape, color, texture and graphics." *Factfinder*, 168 Ohio App.3d at 399.  The jury instructions in the PHPK Lawsuit stated that "trade secrets" may consist of "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, improvement, business information, or plans." (PHPK Lawsuit Jury Instructions, p. 20.)  "The protection of trade dress and trademarks serves to 'secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Id*.  Ohio courts have held that trade dress and trademark infringement necessarily involve advertising.  *Westfield Cos.*, 155 Ohio App.3d at 755; *AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 732 (S.D. Ohio 2007).

Burlington argues that, in order for a misappropriation of trade secrets claim to fall within advertising injury coverage, the trade secrets alleged to have been misappropriated must have been "secret ideas for advertising the products and services." *Factfinder*, 168 Ohio App.3d at

---

[5] Mitchell's compensatory damages costs are the only remaining claims for indemnification subsequent to the Court's ruling that the Knowing Violation provision bars indemnification for Eden and Hensley. *See supra*, at III.C.

402.   But, in *Factfinder*, the policy provision at issue was one covering "misappropriation of advertising ideas or style of doing business,"[6] rather than "infringement in your advertisement of copyright, trade dress or slogan"[7] and advertisement was not defined within the policy as it is in this case.   Thus, the Court is not persuaded that case law finding trade dress or trademark infringement claims fall under advertisement injury provisions is applicable here.   Nevertheless, as indemnification is based on "actual legal liability," the fact that the jury in the PHPK Lawsuit did not necessarily find copyright, trade dress or slogan infringement, is fatal to Defendants' claim.   *Twin Maples*, 159 Ohio App.3d at 594.   The jury instructions on damages only state that PHPK must show its lost profits were proximately caused by the misappropriation of trade secrets and that PHPK claims it lost sales and therefore lost profits because of the misappropriation.   (PHPK Lawsuit Jury Instructions, p. 38.)   There is no mention in the instructions that the misappropriation necessarily involved the use of PHPK's trade secrets in advertising.   Thus, the jury did not necessarily need to find as much.   The exception to the IP Exclusion is not, therefore, applicable.   As a result, the Court finds that the IP Exclusion applies to bar indemnification for Mitchell's compensatory damages.   Summary judgment on behalf of the Defendants on the claim that Mitchell is entitled to indemnification for the damages from the PHPK Lawsuit is **DENIED**.

**B. Late Notice/Breach of Policy**

Defendants seek summary judgment denying Burlington's alleged late notice/breach of policy claim.   An insured's failure to give its insurer notice in a timely fashion bars coverage because notice provisions in insurance contracts are conditions precedent to coverage.   *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 517, 769 N.E.2d 835 (2002)

---

[6] *Factfinder*, 168 Ohio App.3d at 397.
[7] (ECF No. 19-10, Form CG 00 01 10 01, p. 6.)

(citing *Owens–Corning Fiberglas Corp. v. Am. Centennial Ins. Co.,* 74 Ohio Misc.2d 183, 660 N.E.2d 770 (Lucas Cty.1995)).  In *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau,* 88 Ohio St.3d 292, 725 N.E.2d 646 (2000), the Ohio Supreme Court stated: "A provision in an insurance policy requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable time in light of all the surrounding facts and circumstances."  *Id.*

    In *Ferrando v. Auto–Owners Mut. Ins. Co.,* the Ohio Supreme Court articulated a two-step approach for determining whether a prompt notice provision of an insurance policy was breached, and, if so, whether the breach resulted in prejudice to the extent that the coverage is forfeited.  The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely.  This determination is based on asking whether the [ ] insurer received notice "within a reasonable time in light of all the surrounding facts and circumstances."  *Ruby,* [*v. Midwestern Indemn. Co.,* 40 Ohio St.3d 159, 532 N.E.2d 730, syllabus (1988)].  If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and [insurance] coverage is not precluded.  If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced.  Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.  98 Ohio St.3d 186, 208, 781 N.E.2d 927 (2002).

    The material facts are not in dispute.  The Policy states that insureds must notify Burlington "as soon as practicable of an 'occurrence' of an offense which may result in a claim." (ECF No. 19-10, Commercial General Liability Coverage Form, pp. 10-11.)  "If a claim is made or 'suit' is brought against any insured," Burlington must also be notified "as soon as practicable."  (*Id.*)  Burlington contends that Defendants were on notice no later than February

25, 2008, when PHPK sent Eden a cease and desist letter. (PHPK Lawsuit Complaint ¶¶ 4-48, Ex. 2.) Slightly over four months passed between February 25, 2008 and July 7, 2008, the date of the notice sent by Defendants to Burlington (ECF No. 19-4). Seventy-four days passed between the time of the filing of the April 24, 2008 PHPK Lawsuit and the July 7, 2008 notice letter.

The Court finds that a period of four months and a few days does not constitute an unreasonable delay and, in any case, Burlington was not prejudiced by the delay. Defendants not only notified Burlington while the litigation was still pending, the notice was received "in the incipient stages of the litigation." *Bank One, N.A. v. Echo Acceptance Corp.*, 544 F. Supp. 2d 959, 967 (S.D. Ohio 2007); accord *Pa. Gen. Ins. Co. v. Park-Ohio Indus.*, 126 Ohio St.3d 98, 102-04, 2010-Ohio-2745, ¶ 17 (two month delay in notice reasonable where litigation was still pending). Burlington was, therefore, provided with a "meaningful opportunity to investigate the … claims, to determine whether the underlying claims implicated the …. [insurance] agreement" and to "otherwise protect its interest." *Id*. at 967. Defendants' motion for summary judgment on Burlington's late notice/breach of policy conditions is **GRANTED**.

## C. Estoppel/Waiver

Finally, Defendants move for summary judgment as to Burlington's estoppel and waiver claims. A waiver is the voluntary relinquishment of a known right or conduct that warrants an inference of a relinquishment of that right. *Gollings v. Natl. Life Ins. Co.*, 92 Ohio App.3d 726, 730, 637 N.E.2d 76, 79 (1994) (citing *Michigan Auto. Ins. Co. v. Van Buskirk*, 115 Ohio St. 598, 155 N.E. 186 (1927)). By contrast, the doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct. *State ex rel. Cities Serv. v. Orteca*, 63 Ohio St.2d

295, 299, 409 N.E.2d 1018, 1020-1021 (1980).  Ohio courts have consistently held that insurance contracts must be construed by applying the same rules as other written contracts. *Universal Underwriters Ins. Co. v. Shuff*, 67 Ohio St.2d 172, 173, 423 N.E.2d 417, 418 (1981); *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (1992).  As a result, the doctrines of estoppel and waiver have been applied to insurance contracts. *See, generally*, *Pedler v. Aetna Life Ins. Co.*, 23 Ohio St.3d 7, 490 N.E.2d 605 (1986) (estoppel); *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981) (waiver).

Burlington contends that Defendants' five year-delay after the coverage denial in filing this lawsuit "is facial evidence" of an intent to relinquish coverage rights.  However, the Ohio Supreme Court has held that insureds are not required to pursue a declaratory judgment action as a matter of law. *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 587, 1994-Ohio-379, 635 N.E.2d 19 ("court of appeals erred in imposing a duty upon an insured to file a declaratory judgment action in response to an insurer's refusal to defend an action").  Burlington relies upon the same five year delay as the basis for its estoppel argument, which the Court finds equally unavailing.  Burlington had already received a claim for coverage, which it denied.  As the court held in *Sanderson*, Defendants had no duty to file a declaratory action in response to that denial and, therefore, the five year delay cannot be interpreted as agreement to the coverage declination, which Burlington now claims to have relied upon.  Defendants are correct that no genuine issues of material fact exist pertaining to Burlington's waiver and estoppel arguments, which fail as a matter of law.  Summary judgment is **GRANTED** in favor of Defendants as to waiver and estoppel.

## V. CONCLUSIONS

For the reasons stated above, Burlington's Motion for Summary Judgment (ECF No. 19) is **GRANTED in PART and DENIED in PART**.  Defendants' Motion for Partial Summary Judgment (ECF No. 20) is also **GRANTED in PART and DENIED in PART**.  Specifically the Court finds:

- The IP Endorsement does not exclude coverage of Defendants' PHPK Lawsuit costs and Burlington breached its contractual obligation to defend against the PHPK Lawsuit;

- The Knowing Violation provision precludes Burlington's duty to provide indemnification for the compensatory damages awards against Eden and Hensley in the PHPK Lawsuit, and the IP Exclusion precludes indemnification for the same for Mitchell;

- Burlington is not obligated to provide coverage for punitive damages;

- Adjudication of the bad faith claim is not appropriate until after discovery has been completed;

- The PHPK Lawsuit alleged a personal and advertising injury within the meaning of Policy Coverage B;

- Eden, Hensley and Mitchell's are insureds;

- Neither the Material Published Prior to Policy Period Exclusion, nor the Material Published with Knowledge of Falsity Exclusion applies to except Plaintiffs' policy claims from coverage;

- The assumptions of obligations and statute of limitations defenses also do not apply;

- Defendants did not provide Burlington with late notice or breach policy conditions related thereto;

- Neither waiver nor estoppel precludes coverage for the PHPK Lawsuit defense costs;

Summary judgment is **DENIED** in all other respects.

**IT IS SO ORDERED.**

_____9-1-2015_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT CHIEF JUDGE**